**E-FILED**
Monday, 15 March, 2010  03:27:16 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## Urbana Division

| | |
|---|---|
| **ELLA R. DOTSON,** ) | |
|         **Plaintiff,** ) | |
| **v.** ) | |
| ) | **Case No. 08-2235** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** ) | |
|         **Defendant.** ) | |

# ORDER

In November 2007, Administrative Law Judge (hereinafter "ALJ") Joseph Warzycki denied Plaintiff Ella Dotson's application for disability insurance benefits. ALJ Warzycki based his decision on a finding that Plaintiff was able to perform jobs that exist in significant numbers in the national economy.

In October 2008, Plaintiff filed a Complaint (#1) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the ALJ's decision to deny social security benefits. In April 2009, Plaintiff filed a Motion for Summary Judgment (#7). In July 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#9). After reviewing the administrative record and the parties' memoranda, the Court **GRANTS** Plaintiff's Motion for Summary Judgment **(#7)**.

## I. Background
### A. Procedural Background

The parties have consented to the jurisdiction of a United States Magistrate Judge.

In March 1990, Plaintiff filed an initial application for social security disability benefits. The agency denied Plaintiff's application in April 1991. In March 2006, Plaintiff filed a second application for social security benefits alleging disability beginning April 3, 1991. The agency denied Plaintiff's application initially and on reconsideration on the basis that Plaintiff did not have enough quarters of insurance coverage. In June 2006, Plaintiff filed a request for a hearing. In August 2006, the ALJ wrote a letter to Plaintiff to inform her that her date last insured for

disability benefits was September 30, 1990. He stated that Plaintiff must amend her alleged disability date or the ALJ would deny her claim. Plaintiff subsequently amended her alleged onset date to January 25, 1986. The ALJ noted that because of significant changes to the Listings of Impairments since the final decision on Plaintiff's 1990 claim, *res judicata* did not apply to the decision, thus the ALJ would review her claim on the merits.

In November 2007, the ALJ held a hearing. An attorney represented Plaintiff at the hearing. The ALJ subsequently issued a decision denying Plaintiff benefits on the basis that she could perform jobs that exist in significant numbers in the national economy. In August 2008, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. In October 2008, Plaintiff appealed this decision by filing a complaint in this Court pursuant to 42 U.S.C. § 405(g). Plaintiff seeks an outright reversal, and in the alternative, she asks this Court to remand the case for a new hearing.

Plaintiff must establish that she was disabled prior to her date last insured. Thus, the relevant time period at issue in this matter is between January 25, 1986, Plaintiff's alleged onset date, and September 30, 1990, her date last insured. In his decision, the ALJ cites various records from time periods well after the date last insured. The Court notes that these records, along with much of the voluminous record of Plaintiff's medical history, is largely irrelevant to the time period at issue in this case. While medical records slightly before or slightly after the time period at issue may provide relevant evidence, Plaintiff's other medical records are not relevant here.

**B. Factual Background**

Plaintiff is a licensed practical nurse and she last worked in 1985. (R. 117.) Plaintiff first saw her cardiologist, Dr. Kris Patel, in January 1985. (R. 212-13.) She continued to see Dr. Patel with complaints of heart palpitations, fatigue, and dizziness during the time period at issue. (R. 167-82.) During this time, Dr. Patel noted "frequent ectopics" on three occasions (R. 176, 178, 181) and "frequent" premature ventricular contractions (hereinafter "PVCs") on three occasions. (R. 171-72, 178.) Additionally, Plaintiff underwent two twenty-four-hour

Holter monitor tests which revealed "frequent" irregular heart beats. (R. 203-04.) Dr. Patel's clinic notes state that Plaintiff complained of frequent palpitations, episodic dizziness, and marked fatigue. (R. 171-172, 176, 178.) In 1988, Plaintiff still complained of fatigue, but reported only "rare" palpitations, and in 1989, she inquired about returning to work. (R. 169-70.)

At the hearing, Plaintiff testified that she was not able to continue in her employment because of heart palpitations, fatigue, lightheadedness, and dizziness. (R. 357-58, 360.) She also testified that, due to her fatigue, she had to take breaks or naps three times per day. (R. 362.) Plaintiff's husband also testified at the hearing. He stated that Plaintiff would doze off during their conversations, and that she did not do very much, if any, of the housework. (R. 382-83.) A medical expert (hereinafter "ME") also testified. He stated that Plaintiff's Holter monitor test revealed "frequent" PVCs, and that the condition is associated with episodic lightheadedness. (R. 389.) However, he stated that, based on the record, he could not correlate Plaintiff's PVCs to her complaints of symptoms. (R. 391.) He also testified that Plaintiff's falling asleep was not associated with her PVCs, but noted that it could be related to her obesity. (R. 396.)

## II. Standard of Review

In reviewing an ALJ's decision, the Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Commissioner of Social Security as to any fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Brooks v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996). Finally, the Court gives considerable

deference to the ALJ's credibility finding and will not overturn it unless the plaintiff can show those findings are patently wrong. *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992).

### III. Analysis

Plaintiff presents three arguments: (1) the ALJ erred at Step Five by improperly evaluating Plaintiff's credibility; (2) the ALJ erred by failing to consider the effect of Plaintiff's fatigue on her ability to perform substantial gainful activity (hereinafter "SGA"); and (3) the ALJ erred by failing to consider the effect Plaintiff's obesity had on her residual functional capacity (hereinafter "RFC").

### A. Credibility

Plaintiff argues that the ALJ failed to properly assess her credibility because he simply listed criteria and made conclusions without any evaluation or analysis. Specifically, Plaintiff contends that the ALJ erred for the following reasons: (1) the ALJ ignored medical evidence that did not favor his decision; (2) the ALJ mischaracterized evidence in the record, including testimony from the ME; and (3) the ALJ ignored the testimony of Plaintiff's husband.

The Seventh Circuit has outlined a deferential standard for reviewing credibility; a court will reverse the ALJ's findings on credibility only when they are patently wrong. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). A court should conclude that a credibility determination is patently wrong only when it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

First, Plaintiff argues that the ALJ ignored evidence favoring Plaintiff's claim. Defendant responds that the record contains substantial evidence that supports the ALJ's decision, and argues that Plaintiff's medical records show largely normal medical findings during the period prior to September 1990.

4

In assessing credibility, the ALJ stated that "[t]reatment records . . . reveal the claimant reported 'rare episodes' of palpitations. She denied syncope. She complained of malaise and lightheadedness 'at various times.'" (R. 19.) This constitutes the ALJ's only reference to the record with regard to Plaintiff's symptoms. The ALJ is correct that and Dr. Patel noted in 1988 that Plaintiff "complains of rare episodes of palpitations . . . [and] of malaise and lightheadedness at various times." (R. 170.) However, in addition to this reference to "rare" palpitations, the record also refers to "frequent" palpitations or PVCs at least nine times. A majority of these references are based on objective physician assessments of Plaintiff's condition. The record also refers Plaintiff's complaints of dizziness or lightheadedness at least eleven times. An ALJ "may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). The ALJ failed to do so in this case when he ignored significant evidence in the record of "frequent" irregular heartbeats and other symptoms, and instead stated that the record revealed only "rare" palpitations and lightheadedness at various times.

In addition, the ALJ refers to four letters written by Plaintiff's cardiologist, Dr. Patel, in which he stated that Plaintiff was unable to perform her work as a nurse. (R. 144, 160-61, 167.) The ALJ discounts Dr. Patel's letters because he wrote them after Plaintiff's date last insured and because Dr. Patel did not indicate that Plaintiff would be restricted from all work activity. The Court agrees that Dr. Patel's statements made after the date last insured are not relevant to Plaintiff's disability to the extent they are based on Plaintiff's condition after the relevant period. However, the ALJ omits any reference to two similar letters written by Dr. Patel in 1986 which are relevant to Plaintiff's alleged disability. (R. 180, 182.) Plaintiff's cardiologist wrote these letters January 22, 1986, (three days before Plaintiff's alleged onset) and March 5, 1986, (during Plaintiff's alleged period of disability). In these letters, Dr. Patel states that Plaintiff is not able to work due to her current condition.

In contrast to the letters, which the ALJ discounted in part because Dr. Patel wrote them after Plaintiff's date last insured, the ALJ appeared to rely on a Holter monitor test performed in October 1997 that "showed rare PACs and frequent PVCs . . . but there was no correlation of symptoms with any significant arrhythmia." (R. 19, referring to R. 149.) This medical record, dated seven years after the relevant time period, cannot be relied upon to support the ALJ's findings regarding Plaintiff's condition prior to September 1990.

Although an ALJ is not required to list and evaluate the merits of every single piece of evidence before him, he cannot selectively overlook evidence that conflicts with his ultimate conclusion. *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995)*; Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). That is what the ALJ did here when he failed to mention any of the medical records referring to "frequent" ectopics and heart palpitations, and omitted any mention of Dr. Patel's timely letters opining that Plaintiff should refrain from working. It may well be that when all the evidence is considered, the ALJ will still find that Plaintiff is not disabled. Nevertheless, the Court concludes that the ALJ erred when assessing Plaintiff's credibility by "cherry picking" what evidence to use in his decision.

Plaintiff next contends that the ALJ mischaracterized evidence in the record, including testimony from the ME. The Court agrees with Plaintiff that the ALJ's decision is not entirely accurate with regard to the evidence in the record. For example, the ALJ stated that Plaintiff "was not hospitalized for treatment of her cardiac impairment prior to the date last insured." This is inconsistent with the medical records which show hospital admissions in March 1985 and October 1985. (R. 19, 183, 226.) Defendant concedes in its brief that the evidence regarding hospitalization is "not exactly on all fours with the ALJ's statement." (#10, p. 9.) Second, the ALJ states that Plaintiff is not taking any medications for her impairments. While this is true, the ALJ does not mention that both the hospital where Plaintiff was treated and Plaintiff's cardiologist attempted to treat Plaintiff with several different medications, but found that she was unable to tolerate those medications. Finally, the ALJ relies on the ME's testimony to show lack of correlation between Plaintiff's irregular heartbeats and her symptoms. He states that "[t]he [medical] expert indicated that premature beats are not related to lightheadedness." (R. 19.)

However, the ME testified that Plaintiff's impairment "associates with episodic lightheadedness." (R. 389). The ME also testified that one of Plaintiff's Holter monitor tests showed lightheadedness and one did not. Thus, the ALJ's description of this evidence is not accurate or complete.

Plaintiff next argues that the ALJ erred by ignoring the testimony of Plaintiff's husband. Defendant cites *Collins v. Old Ben Coal Co.*, 861 F.2d 481, 489 (7th Cir. 1988), to support his contention that the ALJ adequately considered this lay testimony by obtaining the testimony at the hearing. The ALJ's failure to discuss Mr. Dotson's testimony in his decision may itself not be cause for remand. However, because the Court is remanding the decision for reconsideration, on remand, the ALJ should explain his reasoning regarding Mr. Dotson's testimony.

When making a credibility assessment, the ALJ is required "to build an accurate and logical bridge from the evidence to [his] conclusions" so the Court can effectively review the ALJ's decision. *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). The ALJ did not build that bridge in this case. Rather, he cherry-picked evidence that supported his conclusion while ignoring relevant evidence to the contrary and mischaracterized other evidence in the record. Based on the foregoing, the Court concludes that the ALJ's credibility determination is patently wrong, and remands this matter for reconsideration.

### B. Fatigue and Obesity

Plaintiff next argues that the ALJ failed to consider her complaints of fatigue when determining her ability to sustain SGA-level employment. Because the reconsideration of Plaintiff's credibility may affect this issue, on remand, the Court directs the ALJ to reconsider Plaintiff's purported fatigue.

Finally, Plaintiff argues that the ALJ failed to properly consider Plaintiff's obesity when determining her RFC. The ALJ identified obesity as one of Plaintiff's severe impairments. Because the reconsideration of Plaintiff's credibility assessment may affect the RFC

determination including the effect of Plaintiff's obesity on her RFC, on remand, the Court directs the ALJ to explain his reasoning regarding Plaintiff's obesity.

### IV.  Summary

For the reasons set forth above, the Court **GRANTS** Plaintiff's Motion for Summary Judgment **(#7).**  The Court orders that the decision be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

ENTER this 15th day of March, 2010.

       /s DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE